GERALD F. SUMMERLIN v. NATIONAL SERVICE INDUSTRIES, INC.

No. 843SC357

(Filed 5 February 1985)

**Pensions § 1; Uniform Commercial Code § 31— lump sum payment—wife's unauthorized endorsement of check—employer's liability not discharged**

> The trial court erred in directing verdict for defendant in plaintiff's action to recover pension funds which had accumulated during his employment with defendant where the evidence tended to show that plaintiff's wife signed his name to a lump sum payment check and deposited it in their joint account; plaintiff did not learn the status of his pension fund until three years later; plaintiff's wife was not a holder of the check within the meaning of G.S. 25-3-603(1) and her receipt and cashing of it did not discharge defendant's liability to plaintiff; the wife was not an authorized agent of plaintiff so that her endorsement and cashing of the check discharged defendant, nor did plaintiff ratify his wife's unauthorized endorsement; but an issue of fact remained as to whether plaintiff mentioned in his handwritten note to his wife when he left her that she would be receiving a check for approximately $4,000; and other evidence with regard to plaintiff's and his wife's actions raised an issue of credibility.

FROM an order signed by *Fountain, Judge,* on 20 June 1983 denying plaintiff's motion for summary judgment, and from a judgment signed by *Allsbrook, Judge,* on 8 November 1983 denying plaintiff's motion for a directed verdict and granting defendant's motion for a directed verdict, plaintiff appeals. Heard in the Court of Appeals 29 November 1984.

*Willis A. Talton for plaintiff appellant.*

*James, Hite, Cavendish & Blount, by Marvin Blount, Jr. and Charles R. Hardee, for defendant appellee.*

BECTON, Judge.

In this action filed 14 May 1982 by plaintiff, Gerald F. Summerlin, to recover pension funds which had accumulated during his fourteen years of employment with the defendant, National Service Industries, Inc., the trial court granted directed verdict for defendant. On appeal, the plaintiff contends that the trial court erred in denying his motion for summary judgment, or at the very least, erred when it denied his motion for directed verdict and granted defendant's motion for directed verdict. Believing that this case should have been submitted to the jury, we reverse.

I

In August of 1978, plaintiff terminated his employment with defendant, left his wife and home in Florida, and moved to North Carolina. According to plaintiff's wife, plaintiff left a note saying, among other things, that she would soon be receiving a check for approximately $4,000. The plaintiff denies indicating that a check in any amount would be coming to his wife.

The terms of the pension plan provided that, at the termination of his employment with defendant, plaintiff would have the option of either receiving a lump sum cash refund consisting of the value of his personal contributions to the plan immediately and a deferred monthly benefit or of receiving a larger monthly benefit starting the first day of the month following his sixty-fifth (65th) birthday. On 27 October 1978, plaintiff's wife opened a letter addressed to him at his Florida address, advising plaintiff of his election under the corporate pension plan. According to Mrs. Summerlin, when she could not locate her husband, she signed the document for her husband, electing a cash refund. Thereafter, defendant mailed a check in the amount of $3,361.38 made payable to the order of Gerald F. Summerlin to plaintiff's Florida address. Mrs. Summerlin endorsed the check "Gerald F. Summerlin," deposited it in the Summerlin's joint checking account, and paid some of the plaintiff's outstanding liabilities and some of the "outstanding joint liabilities" of the parties. According to plaintiff, he did not find out about the status of his pension fund until 1981, when the Internal Revenue Service assessed him for failing to include it on his 1978 tax return.

Defendant contends it satisfied its contractual obligations to plaintiff by mailing the check to his last known address; that plaintiff had constructively received the sum in controversy since his wife cashed the check and paid his obligations; and that, in any event, since the bank honored the signature on the check, defendant was no longer liable. We cannot agree with defendant.

Since the check issued to plaintiff constitutes a "negotiable instrument" under N.C. Gen. Stat. Sec. 25-3-104 (1965), defendant's ongoing liability on the check and on the underlying obligation is governed by the commercial paper provisions of the Uniform Commercial Code (the Code), codified at N.C. Gen. Stat. Sec. 25-3-101 *et seq.* (1965). A party is discharged from liability on a negotiable instrument "to the extent of [its] payment or satisfaction to the *holder*. . . ." N.C. Gen. Stat. Sec. 25-3-603(1) (1965) (emphasis added). Discharge of the party on the instrument also discharges him on the underlying obligation to the extent of his discharge on the instrument. N.C. Gen. Stat. Sec. 25-3-802(b) (Supp. 1983). The key issue becomes whether payment or satisfaction has been made to the "holder" in the case *sub judice*, thus discharging the defendant's liability on the instrument and the underlying obligation.

We begin with the definition of a "holder" as "a person who is in possession of . . . an instrument . . . issued or endorsed to him or to his order or to bearer or in blank." N.C. Gen. Stat. Sec. 25-1-201(20) (1965). From the record, it is clear that plaintiff's wife was in possession of a check which was neither "issued or endorsed to [her] or to [her] order or to bearer or in blank." *Id.* She therefore does not qualify as a "holder."

However, the parties have stipulated in the record that the check, labeled Plaintiff's Exhibit No. 1 and Defendant's Exhibit No. 3, was "made payable to the order of Gerald F. Summerlin." *See* N.C. Gen. Stat. Sec. 25-3-110 (1965) ("Payable to order"). Under N.C. Gen. Stat. Sec. 25-3-202 (1965) a "payable to order" instrument may be "negotiated by delivery with any necessary endorsement . . . written by or on behalf of the holder." Consequently, an endorsement by an authorized agent of the "holder" is sufficient to validate the transaction. This interpretation is substantiated by N.C. Gen. Stat. Sec. 25-1-201(43) (1965): an " '[u]nauthorized' signature or endorsement means one made

without actual, implied or apparent authority. . . ." Since an endorsement by an authorized agent of the "holder" is sufficient to negotiate an instrument, payment or satisfaction to an authorized agent of the "holder" is sufficient to discharge the defendant's liability on the instrument and on the underlying obligation.

Alternately, the defendant's liability on the instrument and the underlying obligation may be discharged, if the plaintiff has ratified the allegedly unauthorized endorsement or if the plaintiff is precluded from denying that the endorsement is unauthorized. N.C. Gen. Stat. Sec. 25-3-404 (1965) (unauthorized signatures and endorsements); *American Travel Corp. v. Central Carolina Bank & Trust Co.*, 57 N.C. App. 437, 291 S.E. 2d 892, *disc. rev. denied*, 306 N.C. 555, 294 S.E. 2d 369 (1982).

Therefore, if the plaintiff's wife had the actual, implied or apparent authority to endorse plaintiff's check, the check was negotiated and the defendant's liability on the check and on the underlying obligation was discharged. Similarly, if the plaintiff ratified his wife's unauthorized endorsement or if he is precluded from denying it, defendant's liability on the check and on the underlying obligation is discharged.

Significantly, we find no agency relationship between the plaintiff and his wife, nor any ratification by the plaintiff or facts precluding him from denying that the endorsement is unauthorized, as a matter of law. *See American Travel Corp. v. Central Carolina Bank & Trust Co.* Although we summarily reject the plaintiff's argument that he was entitled to summary judgment, we nevertheless believe that the case should have been submitted to the jury.

Because factual issues must be resolved by the jury, the trial court erred in entering a directed verdict for the defendant.

A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. On such a motion, plaintiff's evidence must be taken as true and considered in the light most favorable to the plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom. A directed verdict for the defendant is not properly allowed

> unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977); *Everhart v. LeBrun*, 52 N.C. App. 139, 277 S.E. 2d 816 (1981).

*Koonce v. May*, 59 N.C. App. 633, 634, 298 S.E. 2d 69, 71 (1982). In this case, neither party was entitled to recover, as a matter of law, considering the evidence presented. The evidence creates a factual dispute with regard to whether plaintiff mentioned in his handwritten note that his wife would be receiving a check for approximately four thousand dollars. And the fact that plaintiff left Florida without leaving a forwarding address and that the funds, when received by plaintiff's wife, were deposited in a joint account are not conclusive to show an agency relationship. For example, plaintiff's wife's testimony that she attempted to locate plaintiff before signing his name on the form requesting a cash payment and again before she endorsed the check made payable to him, seem incongruous with defendant's implicit argument that plaintiff's wife had authority to do what she wanted to with the money by virtue of the note plaintiff left her. Further, in resolving the credibility issue, the jury may also deem it significant that the plaintiff was unaware that the pension fund was paid until he was notified of that fact by the Internal Revenue Service. In this regard, a stipulation by the parties that the husband had the option of withdrawing his funds at the termination of employment or leaving them in the pension plan until he reached the age of sixty-five, becomes important, especially since the plaintiff was fifty-seven at the time he terminated his employment with defendant.

In short, since marriage alone does not create an agency relationship, and since the evidence does not so clearly establish the facts in issue that no reasonable inference to the contrary can be drawn, a directed verdict was inappropriate as credibility remained an issue. *See Snipes v. Snipes*, 55 N.C. App. 498, 286 S.E. 2d 591, *aff'd per curiam*, 306 N.C. 373, 293 S.E. 2d 187 (1982).

For the foregoing reasons, this matter is

Reversed and remanded.

Judges ARNOLD and WELLS concur.