McMurray v. Surety Federal Savings & Loan Assoc.

JOHN H. McMURRAY, Ancillary Administrator of the Estate of PATRICIA W. GALYON (Deceased), and GINNY GALYON, JEFFREY KEITH GAL-YON and STEVEN WAYNE GALYON v. SURETY FEDERAL SAVINGS AND LOAN ASSOCIATION

No. 8625SC298

(Filed 16 September 1986)

Insurance § 27.1— transfer of loan—availability of credit life insurance—no duty of lender to disclose

A lender does not have the duty to disclose the availability of credit life insurance or the procedures for obtaining credit life insurance at the time of a loan transfer when the subject was not broached by the bank, insurance was never requested by the borrower/transferee, and there is no evidence to indicate that the borrower/transferee made any contact with the bank concerning the loan transfer process.

APPEAL by plaintiffs from *Saunders (Chase B.), Judge.* Judgment entered 25 October 1985 in Superior Court, BURKE County. Heard in the Court of Appeals 27 August 1986.

Plaintiffs instituted this action seeking damages for defendant's negligent conduct and unfair and deceptive trade practices in connection with a 1977 loan transfer.

On 8 November 1968 Charles and Patricia Galyon purchased a home in Burke County. On 24 September 1971 in order to refinance their home, Mr. and Mrs. Galyon executed a note and deed of trust in favor of defendant in the amount of $20,400.00. At the suggestion of defendant's loan officer, Charles Galyon made application for credit life insurance. Triad Life Insurance Corporation issued a decreasing term credit life insurance policy on the life of Charles Galyon. The premiums were paid as part of the Galyons' monthly mortgage payments.

Subsequently the Galyons separated and divorced. By deed dated 18 March 1975 Charles Galyon conveyed his interest in the marital home to Patricia Galyon. Thereafter she made the monthly mortgage payments to the defendant. In 1977 the loan was transferred in the lender's records to Patricia Galyon individually without any mention of credit life insurance. Charles Galyon was not released and remained liable on the note.

Patricia Galyon continued to make mortgage payments until her death in August 1983. Following her death, her children

learned that there was no credit life insurance on their mother's life but that the policy on the life of Charles Galyon was still in effect. Through the defendant, Charles Galyon cancelled the policy on his life effective 1 April 1977. A premium refund check for the premiums paid from March 1977 until 1983 in the amount of $1,126.18 was tendered to the estate but never cashed. The house was eventually sold by Patricia Galyon's children and the loan was paid off in March, 1984.

At the close of plaintiffs' evidence, defendant's motion for directed verdict was granted. Plaintiffs' cross-motion for directed verdict was denied. Plaintiffs appeal.

*Mitchell, Teele, Blackwell, Mitchell & Smith by Thomas G. Smith for plaintiff-appellants.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin by John W. Ervin, Jr. and Sam J. Ervin, IV, for defendant-appellee.*

EAGLES, Judge.

Plaintiffs assign error to the trial court's granting defendant's motion for a directed verdict made at the close of all the evidence. Plaintiffs contend that in a situation where one borrower has transferred the loan and underlying property securing the loan to a co-borrower the loan officer in charge of the loan transfer has a legal duty to offer credit life insurance to the transferee. We disagree.

A motion for directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury. *Everhart v. LeBrun,* 52 N.C. App. 139, 277 S.E. 2d 816 (1981). In ruling on a defendant's motion for directed verdict, the trial court must take plaintiff's evidence as true, considering plaintiff's evidence in the light most favorable to him and giving him the benefit of every reasonable inference. *Id.* Defendant's motion for a directed verdict should be denied "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Graham v. Gas Co.,* 231 N.C. 680, 683, 58 S.E. 2d 757, 760 (1950). Given these principles it is clear that a defendant in a negligence action is not entitled to a directed verdict unless the plaintiff has failed, as a matter of law, to establish the elements of actionable negligence. *Everhart v. LeBrun, supra.*

McMurray v. Surety Federal Savings & Loan Assoc.

Negligence has been defined as the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them. *Stanford v. Owens*, 46 N.C. App. 388, 265 S.E. 2d 617, *disc. rev. denied*, 301 N.C. 95 (1980). The traditional elements of actionable negligence are the existence of a legal duty or obligation, breach of that duty, proximate cause and actual loss or damage. W. Keeton, Prosser and Keeton on Torts, Section 30 (5th ed. 1984).

Plaintiffs contend that a legal duty existed at the time of the loan transfer that required the defendant to inform Patricia Galyon about credit life insurance. Plaintiffs contend that this legal duty arose out of a fiduciary relationship that existed between Galyon as borrower and defendant as lender. However, plaintiffs' evidence failed to prove the existence of any fiduciary relationship. A fiduciary relationship exists "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). The relationship extends to instances where "there is confidence reposed on one side, and resulting domination and influence on the other." *Id.*

There is no evidence that Patricia Galyon reposed a special confidence in Surety Federal in connection with the loan transfer. Plaintiffs' evidence shows that on 18 March 1975 Charles Galyon by deed conveyed his interest in the marital home to Patricia Galyon. Following the divorce in 1975, Patricia Galyon made all the mortgage payments to defendant which included insurance premium payments on the life of Charles Galyon. In 1977 Surety Federal contacted Mr. and Mrs. Galyon concerning delinquent mortgage payments. Prior to this time Surety Federal had never received any information about the Galyons' divorce and the resulting conveyance from Charles to Patricia. Mr. Galyon requested that the defendant "transfer the deed to Pat's name," and a copy of the 1975 deed from Charles to Patricia was forwarded to the defendant. On 22 March 1977 Charles T. Henson, vice president and secretary of Surety Federal, wrote a letter to Patricia Galyon informing her that the loan account had been changed to her name individually in accordance with the deed and that all future correspondence would be directed to her.

Plaintiffs rely on *Stone v. Davis*, 66 Ohio St. 2d 74, 419 N.E. 2d 1094, *cert. denied*, 454 U.S. 1081, 70 L.Ed. 2d 614, 102 S.Ct. 634 (1981), in which the Supreme Court of Ohio held that "in broaching the subject of mortgage insurance to a loan customer, a lending institution has a duty to advise the customer as to how this insurance may be procured." *Id.* at 80, 419 N.E. 2d at 1099. This holding is based on the Ohio court's finding that when a bank "broaches" the subject of mortgage insurance to a loan customer "the bank acts as its customer's fiduciary and is under a duty to fairly disclose to the customer the mechanics of procuring such insurance." *Id.* at 78, 419 N.E. 2d at 1098. Though the Ohio Supreme Court's analysis of the facts before it in *Stone* is persuasive, the facts here are different. The *Stone* decision rests primarily on the fact that the bank "broached" the subject of mortgage insurance and by doing so acted as the borrower's fiduciary under a duty to disclose how to procure the insurance. Here, Surety Federal never "broached" the subject of credit life insurance with Patricia Galyon at the time of the loan transfer. In fact, there is no evidence of any contact between Patricia Galyon and Surety Federal at the time the loan was transferred except for a letter from Mr. Henson to Mrs. Galyon informing her after the fact that the loan had been transferred to her name individually. There is no evidence that Patricia Galyon requested credit life insurance. Charles Galyon remained liable on the note and deed of trust. He never requested that the insurance on his life be cancelled. We do not agree with plaintiffs' argument that because defendant "broached" the subject of credit life insurance six years earlier in connection with the original loan, it was under a legal duty to do so again at the time of the loan trasfer.

Plaintiffs make much of the existence of defendant's internal memorandum, a "Loan Transfer Checklist," which includes among the items to be checked in the loan transfer process the listing "Life Insurance." Plaintiffs contend that because "Life Insurance" appeared on the checklist defendant was under the legal duty to inform Patricia Galyon as to the availability of credit life insurance. We do not believe that the existence of a provision for life insurance on defendant's internal checklist memorandum gives rise to a legal duty to provide such information, especially when the subject has not been broached by the bank or inquired about by the borrower/transferee.

In this case of first impression we decline to impose on a lender the duty to disclose the availability of credit life insurance or the procedures for obtaining credit life insurance at the time of a loan transfer when the subject was not "broached" by the bank, insurance was never requested by the borrower/transferee and there is no evidence to indicate that the borrower/transferee made any contact with the bank concerning the loan transfer process. Accordingly, we affirm the trial court's directed verdict for defendant.

Plaintiffs also assign error to the exclusion of Steven Galyon's testimony about when he and his mother learned she had cancer. Since we have affirmed the trial court's granting of defendant's motion for directed verdict on the ground that plaintiffs' evidence failed to prove the existence of a legal duty, we need not address assignments of error relating to other issues.

Affirmed.

Judges ARNOLD and PARKER concur.